IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EUGENE GLENN,                              )
                                           )
              Plaintiff,                    )
                                           )        CIVIL ACTION NO. 2:11cv999-WC
       v.                                   )
                                           )
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
              Defendant.                    )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff, Eugene Glenn, applied for disability insurance benefits and supplemental

security income benefits under Titles II and XVI of the Social Security Act ("the Act"), 42

U.S.C. §§ 1381 *et seq.*  His application was initially denied at the initial administrative level.

Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").

Following the hearing, the ALJ issued an unfavorable decision in which he found Plaintiff

not disabled.  The Appeals Council rejected Plaintiff's request for review of the ALJ's

decision.  The ALJ's decision consequently became the final decision of the Commissioner

of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L.
No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with
respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 7); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-three years old at the time of the hearing before the ALJ and had completed the eighth grade.  Tr. 90.  His past relevant work experience was as a "lumber stacker," "housekeeper/cleaner," "cook helper," "poultry worker," "fast food worker," and "small products assembler."  Tr. 106.  Following an administrative hearing, and employing the five-step process, the ALJ found Plaintiff had "not engaged in substantial gainful activity since February 12, 2008, the alleged onset date." (Step 1) Tr. 80.  At Step 2, the ALJ found that if Plaintiff were to stop his substance abuse, he would suffer the following severe impairments:  "gout, status post-stab wound to the left thigh, status post-frontal lobe contusion, alcoholic hepatitis, neuralgia, headaches, polysubstance abuse, borderline intellectual functioning, antisocial personality disorder,  and anxiety disorder."  Tr. 87.  The ALJ then found that if Plaintiff discontinued the substance abuse, he "would not have an impairment or combination of impairments that met or medically equaled one of the listed impairments."  (Step 3) Tr. 88.  Next, the ALJ determined that  if Plaintiff discontinued the substance abuse, he would have the RFC "to perform less than a full range of medium work."  Tr. 88.  The ALJ went on to list a litany of limitations.  *Id*.  The ALJ also found that if Plaintiff stopped the substance abuse, he would be able to perform past relevant work as a housekeeper/cleaner, small products assembler, and lumber stacker.  (Step 4).  Tr. 106.  Even though that finding would preclude a finding of disability, the ALJ continued on to Step 5, and, after consulting with the VE, the ALJ found that if Plaintiff stopped the substance abuse,

"considering [his] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] can perform." Tr. 107. The ALJ identified the following occupations as examples: "dietary aide"; "laundry worker"; and "marker." *Id*. Accordingly, the ALJ concluded that Plaintiff would not be disabled if he stopped the substance abuse. *Id*.

## IV.   PLAINTIFF'S CLAIM

Plaintiff presents a single issue for this courts review: whether the ALJ erred when he "failed to accept the VE's testimony which is substantial evidence that the ALJ's RFC assessment would result in a rate of absenteeism that would exceed the customary tolerances of potential employers." Pl.'s Br. (Doc. 12) at 11.

## V.   DISCUSSION

Plaintiff argues that the ALJ's decision is due to be reversed, because the VE testified that after including Plaintiff's decompensation and gout limitations, the RFC "would cause a rate of absenteeism which would be unacceptable for most unskilled occupations (Tr. 69)." Pl.'s Br. (Doc. 12) at 12. "More specifically, the VE testified that, for unskilled work, most employers will tolerate a maximum of two absences per month, but some only tolerate one absence per month (Tr. 69). The VE further testified that given the 'episodes of decompensation' and the 'gout attacks,' this could cause an unacceptable rate of absenteeism." *Id*. Plaintiff argues both that the ALJ ignored this aspect of the VE's

testimony, and that he "clearly rejected" it.  *Id*. at 12 & 14.  Plaintiff also asserts that the VE's testimony is substantial evidence that he is disabled.

 After providing a hypothetical that included sufferings from gout attacks and one to two episodes of decompensation, the ALJ asked the VE whether such an individual could perform Plaintiff's past relevant work and/or other work in the regional or national economy. Tr. 66-67.  The VE testified that such an individual could perform Plaintiff's past relevant work and that there were other jobs in the regional or national economy that such an individual could perform.  Tr. 67-69.  The ALJ then inquired as to the acceptable maximum absenteeism rate for unskilled workers.  Tr. 69.  The VE testified that given a hypothetical of nine days absent due to gout, such an individual would still be able to perform the listed jobs.  Tr. 70.  On cross-examination, counsel for Plaintiff asked the VE, with regard to absenteeism, if he was taking the one to two episodes of decompensation into account when rendering his opinion.  *Id*.  The VE testified that if such an individual were to miss more than 12 but less than 24 days of work, some employers would tolerate that, and some would not. Tr. 71.  That was the end of the testimony on the matter.

 The court struggles to follow Plaintiff's argument that this testimony constitutes substantial evidence of disability.  The court does not agree that the ALJ either ignored or rejected the VE's testimony.  In fact, the ALJ clearly relied on the VE's testimony, who, even assuming the absenteeism suggested by Plaintiff's counsel, testified that Plaintiff would be able to work.  In other words, the VE did not testify that Plaintiff's absenteeism would

preclude him from finding jobs.  Plaintiff's argument hinges on the assumption that Plaintiff would suffer from maximum amounts of gout and episodes of decompensation within a year, at the maximum rate, and that this would result in his termination for absenteeism and foreclose his ability to find employment.  But this was not the testimony of the VE.  The VE testified that some employers would not tolerate even 12 days of absenteeism, but that others would.  "[B]y merely eliciting testimony from the VE that missing work more than twice a month results in unemployment, the ALJ did not somehow impute such absenteeism to Plaintiff."  *Davis v. Astrue*, 2010 WL 3258619, at*6 (M.D. Ala. Aug. 16, 2010).  "Plaintiff's claim [ . . . ] confuses the very nature and purpose of the practice of posing hypothetical questions to a VE."  *Id*.  In any case, Plaintiff's claim that the ALJ either ignored or rejected the VE's testimony fails, where the VE testified on cross-examination, taking counsel's hypothetical, that assuming the gout and episodes of decompensation, Plaintiff could still perform work in the regional and national economies.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 22nd day of February, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE